IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANDRA TREZZA | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 18-1626 |
| SOANS CHRISTIAN ACADEMY, INC. ET AL. | : |

**MEMORANDUM**

**SURRICK, J.**                                                                                                                                            **MARCH 25, 2019**

Presently before the Court is a Motion to Dismiss Plaintiff's Complaint by Defendants Soans Christian Academy, Inc., Grace Trinity United Church of Christ, and the Pennsylvania Southeast Conference United Church of Christ. (ECF No. 11.) For the following reasons, the Motion will be granted.

**I. BACKGROUND**

Plaintiff Sandra Trezza brings this wrongful discharge action under federal and state whistleblower laws and under Pennsylvania common law. She alleges that she was terminated as Director of Soans Christian Academy (the "Academy"), a childcare facility located in Philadelphia, Pennsylvania, after she reported substantial wrongdoing and waste by the facility.

Plaintiff was hired as the Director of the Academy on August 31, 2017. (Compl. ¶ 31, ECF No. 1.) She was hired by her supervisor, Chandra Soans. (Appointment Letter, Def.'s MTD Ex. B, ECF No. 11.) At the time, the Academy was a new childcare facility that planned to open for the 2017-2018 schoolyear. (Compl. ¶ 31.) Some of Plaintiff's responsibilities as Director included drafting foundational documents for the Academy, recruiting families for enrollment, and giving tours of the childcare facility. (*Id.* ¶ 32.) The Academy utilizes federal funding through the Head Start Program. (*Id.* ¶¶ 25-26.) Head Start is a program administered through

the United States Department of Health and Human Services that aims "to promote the school readiness of low-income children by enhancing their cognitive, social, and emotional development." 42 U.S.C. § 9831. As a Pennsylvania childcare facility, the Academy is subject to various state regulations governing, among other things, the health and safety training of its employees. *See* 55 Pa. Code §§ 3270.1, 3270.31(e).

Plaintiff alleges that she reported the Academy's failure to abide by (1) certain state regulations and (2) requirements for obtaining federal funding through the Head Start program. Specifically, Plaintiff alleges that the Academy violated state law by encouraging her to falsely certify her completion of a required health and safety class. (Compl. ¶¶ 35-41.) The Complaint also alleges that the Academy and Mr. Soans instructed families how to fraudulently receive funding through the Head Start program, and that Plaintiff refused to sign eligibility paperwork for those families she believed were ineligible. (*Id.* ¶¶ 42-49.) Finally, Plaintiff alleges that she was reprimanded by Mr. Soans after she disclosed to the Philadelphia School District that two teachers at the Academy did not possess the requisite documentation for compliance with the Head Start program. (*Id.* ¶¶ 50-56.) On October 19, 2017, Mr. Soans told Plaintiff that she "made [him] look bad" to the School District. (*Id.* ¶ 57.) The following day, Plaintiff was terminated. (*Id.* ¶ 58.) Plaintiff alleges that she was terminated as a result of engaging in protected whistleblowing activities.

On April 18, 2018, Plaintiff filed a Complaint. In Count I, Plaintiff alleges that Defendants violated the Pennsylvania Whistleblower Act, 43 P.S. § 1422, *et seq.* In Count II, Plaintiff alleges that Defendants wrongfully discharged Plaintiff under the public policy exception to Pennsylvania's common law doctrine of employment at will. In Count III, Plaintiff alleges that Defendants retaliated against her in violation of the False Claims Act ("FCA"), 31

2

U.S.C. § 3730, *et seq*. Plaintiff brings these claims against four Defendants: (1) the Academy, (2) the Grace Trinity United Church of Christ ("Grace Trinity Church"); (3) Grace Neighborhood Development Corporation ("Grace Development"); and (4) the Pennsylvania Southeast Conference United Church of Christ ("PASEC"). Defendants now move to dismiss the Complaint against three of the Defendants: the Academy; the Grace Trinity Church; and the PASEC, contending that none of these entities were Plaintiff's "employer." Defendants do not seek dismissal of the claims against Grace Development.

## II. LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

As noted above, Defendants do not seek dismissal of any of Plaintiff's claims against Grace Development at this juncture. Rather, Defendants seek to dismiss all three of Plaintiff's

3

claims against the remaining Defendants, contending that they are not Plaintiff's employer and therefore are not liable for her alleged damages. In support of this, Defendants attach as exhibits to their Motion to Dismiss two documents: (1) Plaintiff's Appointment Letter dated August 29, 2017; and (2) Plaintiff's Termination Letter dated October 20, 2017 (Termination Letter, Def.'s MTD Ex. C).[1] Both letters are from Grace Development and written on Grace Development letterhead. The subject line of the Termination Letter provides "Termination of your Position as Director and Employment with [Grace Development]." (Termination Letter.)

Plaintiff does not dispute that Grace Development was her employer. Plaintiff instead argues that the other Defendants should not be dismissed from this case because they, together with Grace Development, constitute a "single employer." (Pl.'s Resp. 7, ECF No. 13.) Plaintiff relies on the "single employer test," which is also referred to as the "integrated enterprise" test. The single employer test was created by the National Labor Relations Board ("NLRB") for use in labor cases. In *NLRB v. Browning-Ferris Industries of Pennsylvania, Inc.*, the Third Circuit described the single employer test:

> A "single employer" relationship exists where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a "single employer." The question in the "single employer" situation,

---

[1] "In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. 544. "A document forms the basis of a claim if . . . [it] is 'integral to or explicitly relied upon in the complaint.'" *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where the plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation and internal quotation marks omitted). We may consider the exhibits Defendants attach to their Motion to Dismiss without the need to convert the Motion to one for summary judgment. The fact that Plaintiff was hired and later terminated as Director of the Academy is integral to the allegations in her Complaint. In addition, Plaintiff cannot dispute that she was put on notice of these documents as both were directed to her.

> then, is whether the two nominally independent enterprises, in reality, constitute only *one integrated enterprise*. . . .
>
> In answering questions of this type, the Board considers the four factors . . . : (1) functional integration of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership. Thus, the "single employer" standard is relevant to the determination that separate corporations are not what they appear to be, that in truth they are but divisions or departments of a single enterprise. "Single employer" status ultimately depends on all the circumstances of the case and is characterized as an absence of an arm's length relationship found among unintegrated companies.

691 F.2d 1117, 1122 (3d Cir. 1982) (internal quotation marks and citations omitted) (emphasis in original).

Relying on this test, Plaintiff contends that the four Defendants named in the Complaint "are all a part of the same functional enterprise and together, as one unit, manage the operations of the Academy." (Pl.'s Resp. 8.) Specifically, she argues that common addresses among the Defendants support a finding of integrated operations, alleging that Grace Neighborhood and Grace Trinity Church share a registered business address, and that the Academy and Grace Development share a business address. Plaintiff also argues that common management and common ownership support a finding that all Defendants constitute a single employer. In support of this, she alleges that her supervisor, Mr. Soans, served as Executive Director of Grace Neighborhood and Senior Pastor of Grace Trinity Chruch, while his wife, Betsy Soans, served as President of the Academy.

The problem with Plaintiff's argument is that the Third Circuit has not explicitly adopted the single employer test for assessing who is liable under the FCA's anti-retaliation provision.[2]

---

[2] Relying on *Lafata v. Raytheon Co.*, 147 F. App'x 258, 262 (3d Cir. 2005), Plaintiff wrongly asserts that the Third Circuit has stated that the single employer test applies to all federal employment statutes. In *Lafata*, the Third Circuit briefly addressed the plaintiff's "theory" that the single employer test applied to federal employment statutes; however, the court was quick to reject this argument. In fact, the court declined the opportunity to consider whether it would apply in an ERISA context. *Id.*

5

We are not aware of any case in which the Third Circuit has addressed application of the single employer test in the context of the FCA. Based upon other Third Circuit decisions, however, we conclude that the Third Circuit would not adopt the single employer test when considering FCA retaliation claims.

Most notably, the Third Circuit has rejected application of the single employer test in Title VII cases. In *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 85 (3d Cir. 2003), the court considered whether "two entities should together be considered an 'employer' for Title VII purposes." *Id.* The Court analyzed the policy behind the single employer test and decided that the framework was inapplicable in the context of Title VII cases. *See id.* (noting that "given the different policies animating" Title VII and the National Labor Relations Act, the "NLRB's [single employer] test does not self-steer to the Title VII context"). The court rationalized that the single employer test is instead "designed to determine whether the NLRB may decide a particular labor dispute." *Id.*; *accord Papa v. Katy Indus., Inc.*, 166 F.3d 937, 942-43 (7th Cir. 1999) (rejecting the NLRB's "single employer test" for use in anti-discrimination cases). FCA retaliation claims are more analogous to Title VII discrimination claims than they are to traditional labor disputes. Therefore, the Third Circuit's policy rationale in *Nesbit* lends support to declining adoption of the single employer test in FCA retaliation claims. *Cf. Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485-86 (3d Cir. 2001) ("Because the Board was concerned only with labor law and policy, it developed [the single employer] test for corporate 'sameness' that, likewise, concerned itself only with those aspects of corporations having a direct relevance to labor relations.").

In fact, the Third Circuit, following Supreme Court guidance, employs traditional common law theories of the employment relationship when considering the proper parties in

FCA retaliation claims. *See U.S. ex rel. Watson v. Conn. Gen. Life Ins. Co.*, 87 F. App'x 257, 261 (3d Cir. 2004). The FCA anti-retaliation provision creates "a private cause of action for an individual retaliated against by [her] employer for assisting an FCA investigation or proceeding." *Graham Cty. Soil & Water Conserv. Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 412 (2005). Specifically, the statute makes it unlawful for an "employee" such as Plaintiff to be "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment" as a result of "efforts" to stop violations of the FCA. 31 U.S.C. § 3730(h)(1). The FCA does not define "employee," nor does it define or even use the word "employer." The Supreme Court has held that where, as here, "Congress has used the word 'employee' without defining it," courts should look to the "conventional master-servant relationship as understood by common-law agency doctrine." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322 (1992) (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739-40 (1989)). Under *Darden*,

> [i]n determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* at 323-24 (quoting *Reid*, 490 U.S. at 751-52).

In *Watson*, the Third Circuit applied the *Darden* factors when considering whether the plaintiff was an "employee" with standing to assert a claim under the FCA's anti-retaliation provision. The *Watson* court specifically held that an independent contractor did not have

7

standing to assert an FCA retaliation claim. *Watson* was decided prior to amendments made to the FCA, which now defines "employee" more broadly to include independent contractors. *Watson* also does not address whether any alternative framework such as the single employer test could be used to assess liability under the FCA. However, the Third Circuit's adherence to the *Darden* factors to consider the contours of the employment relationship for purposes of FCA retaliation claims remains good law.

Plaintiff does not allege any facts that would lend themselves to a *Darden* analysis. Plaintiff does not even mention *Darden* in her papers. Plaintiff instead invites us to adopt a labor-law specific standard to determine whether the alleged affiliated Defendants were also her "employers" for purposes of her FCA retaliation claim. We decline to do so. *See Rhodes v. Sutter Health*, No. 12-0013, 2012 WL 1868697, at *4 (E.D. Cal. May 22, 2012) (dismissing FCA retaliation claims against affiliated defendants and stating that "[o]nly a few courts have considered the integrated enterprise test in the context of claims under the federal FCA, and none have squarely held the test applicable to claims like plaintiff's brought under 31 U.S.C. § 3730(h)"); *Campion v. Ne. Utilities*, 598 F. Supp. 2d 638, 654 & n.12 (M.D. Pa. 2009) (applying *Darden* to determine whether certain defendants were "employers" of the plaintiff for purposes of an FCA retaliation claim, but noting that "it is certainly debatable whether the integrated enterprise test, a labor-specific veil-piercing test, . . . should be applied in the context of FCA anti-retaliation claims"); *Lytle v. Capital Area Intermediate Unit*, No. 05-0133, 2008 WL 2777403, at *1-2 (M.D. Pa. July 14, 2008) (applying *Darden* to determine whether a defendant was plaintiff's "employer" and therefore potentially liable for retaliation under the FCA).

We are mindful that district courts in other jurisdictions have applied the single employer or integrated enterprise test to FCA retaliation claims. *See, e.g., Merritt v. Mountain Laurel*

*Chalets, Inc.*, 96 F. Supp. 3d 801, 818 (E.D. Tenn. 2015) (recognizing that no circuit court has adopted the integrated enterprise test for FCA claims, however, applying it to facts of an FCA retaliation claim only after first considering *Darden* factors); *Lipka v. Advantage Health Grp., Inc.*, No. 13-2223, 2013 WL 5304013, at *9 (D. Kan. Sept. 20, 2013) (declining to grant motion to dismiss affiliated defendants "because the court has uncovered no cases indicating that the joint enterprise test, as a matter of law, would not apply to FCA whistleblower claims" and because neither party contested applicability of the test); *Thompson v. Quorum Health Res., LLC*, No. 06-168, 2007 WL 2815972, at *3 (W.D. Ky. Sept. 27, 2007) (applying the integrated enterprise test to FCA retaliation claims without considering or deciding whether it even applied in FCA context); *U.S. ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, No. 01-4078, 2005 WL 3542471, at *6 (D.N.J. Dec. 23, 2005) (applying integrated enterprise test from *Browning* to FCA *qui tam* claim, at plaintiff's request, without first considering whether test was applicable to these claims). However, none of these cases specifically address whether the standard had ever been adopted in the FCA context. We are not persuaded by these cases, nor are we convinced that the Third Circuit would adopt the single employer test (or integrated enterprise test) to consider FCA retaliation claims.

Plaintiff's sole argument in response to Defendants' Motion to Dismiss is that the single employer test applies to FCA claims. With respect to Plaintiff's claims for retaliation under the Pennsylvania Whistleblowers Act and for wrongful discharge under Pennsylvania common law, Plaintiff offers no caselaw or argument in support of application of the single employer test to these claims. Plaintiff has not alleged plausible claims against Soans Christian Academy, Inc., Grace Trinity United Church of Christ, or the Pennsylvania Southeast Conference United Church of Christ, as these entities were not her employer.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to dismiss will be granted. All claims against Defendants Soans Christian Academy, Inc., Grace Trinity United Church of Christ, and the Pennsylvania Southeast Conference United Church of Christ will be dismissed.

An appropriate Order follows.

**BY THE COURT:**

R. BARCLAY SURRICK, J.